## J. ARTHUR ATCHLEY v. H. L. ISBILL, et al.

Eastern Section. July 24, 1926.

Petition for Certiorari denied by Supreme Court. October 16, 1926.

1. **Officers.** **Clerk and master must pay on demand the money held in a partition suit according to the directions and decrees of the court.**
Under Shannon's Code, section 6292, the clerk and master holding money from a partition suit is required to promptly pay on demand to the parties entitled thereto all monies in their hands according to the directions and decrees of the court.

2. **Officers.** Clerk and master not liable on bond for paying money to a party who has assigned his interest, where the assignment has not been made a part of the order or decree.

In an action against the clerk and master and the sureties on his bond to recover money paid out by the clerk and master where the record showed that an assignment had been made and pasted in the record book but that the assignment had not been noted in the decree or record of the court, held that under the statute the clerk and master was required to pay the money according to the directions and decrees of the court, and where he had paid the money on demand to the party decreed to be entitled to it, he was not liable to the assignee.

3. **Practice.** Where the owner of a fund in court assigns it or a part of it to some third party a decree should be secured recognizing the assignment.

The proper practice where the owner of a fund in court assigns it or a part of it to some third party is for the third party to procure the entry of a decree recognizing the assignment and ordering the master and clerk to pay the money to him.

4. **Partition.** Money received by the clerk and master in a partition suit is held in custodia legis.

The money received by the clerk and master for the sale of lands in partition is in custodia legis and subject to the orders and decrees of the court and cannot be lawfully paid out to anyone except by the order of the court. The clerk and master is not bound to recognize an assignment which is not mentioned in the decree.

Appeal from Chancery Court, of Monroe County; Hon. Ernest R. Taylor sitting by interchange with Hon. T. L. Stewart, Chancellor.

Affirmed.

J. Fred Bibb, of Knoxville, for appellant.

J. D. Penland, of Madisonville, for appellee.

THOMPSON, J. The complainant, J. Arthur Atchley, filed a summary motion against H. L. Isbill, former Clerk & Master, and the sureties on his official bond, seeking to recover $1,294.37, with interest from June 17, 1925, and twelve and one-half percent damages, on account of the fact that in a partition suit pending in the chancery court the defendant Clerk & Master paid out the proceeds of a sale of real estate to the original complainant therein after he had received and filed assignments thereof from the original complainant to Mr. Atchley.

The Chancellor heard the case on oral testimony, made a written finding of facts in the form of an opinion, and entered judgment dismissing the motion and taxing complainant, Atchley, with the costs. His motion for a new trial having been overruled, Mr. Atchley prepared and filed a bill of exception in the cause, and appealed to this court and assigned errors.

The facts, as we understand them, are as follows:

J. Mack Miller, a single man, owned an undivided one-fourth interest in three pieces of real estate in Sweetwater, Monroe county. He also owned an undivided one-fourth interest in a piece of real

estate in Knox county. Prior to February, 1920, he killed a girl by the name of Frankie Walker and was tried and acquitted in the criminal court of Knox county. Also, J. W. Walker, administrator of Frankie Walker, deceased, sued him in a civil action for damages in the circuit court of Knox county. Complainant, J. Arthur Atchley, an attorney at Knoxville, defended him in both cases.

On February 2, 1920, J. Mack Miller gave to J. Arthur Atchley as a fee, his negotiable promissory note for $1250, payable one day after date, with interest from date payable semi-annually. The note also provided for ten per cent attorney's fee, etc., and showed on its face that it was secured by three pieces of real estate in Sweetwater, Monroe county. On the same day, i. e. February 2, 1920, Miller conveyed his undivided one-fourth interest in the three pieces of real estate in Sweetwater, to Edward F. Walsh, Trustee, to secure to Mr. Atchley the payment of the note.

Also, on February 2, 1920, J. Mack Miller gave to J. Arthur Atchley his negotiable promissory note for $400, and conveyed his undivided one-fourth interest in the piece of real estate in Knox county to Edward F. Walsh, Trustee, to secure to Mr. Atchley the payment of said note. Both deeds of trust were duly and properly recorded. The notes were not paid and the deeds of trust had to be foreclosed.

On September 16, 1921, a final judgment for $800, and court costs, was rendered against J. Mack Miller in favor of J. W. Walker, administrator, etc., in the circuit court of Knox county in the damage suit above mentioned. This judgment was not appealed from and became final in all respects. Mr. S. E. Hodges, an attorney of Knoxville, represented J. W. Walker, administrator.

On May 20, 1922, the following written agreement was entered into:

"This agreement made and entered into at Knoxville, Tennessee, on this the 20th day of May, 1922, by and between J. W. Walker of the first and J. Arthur Atchley of the second part, witnesseth, that;

"Whereas, first party, as the administrator of the estate of his daughter, Frankie Walker, deceased, has secured a judgment in the circuit court of Knox county, Tennessee, against one J. Mack Miller for $800 and costs, and,

"Whereas, second party, had previous to the rendition of said judgment, and on the 2nd day of February, 1920, taken a mortgage from said J. Mack Miller on his one-fourth undivided interest in one house and lot located at No. 1911 Coker avenue, Knoxville, Knox county, Tennessee, to secure a certain promissory note for $400 dated February 2, 1920, providing for interest and attorney's fees, which mortgage was foreclosed by the trustee named in said mortgage on the 18th day of February, 1922, at which time the total amount of said indebtedness, interest and attorney's fees was $494.12, and,

"Whereas, at said sale, first party became the highest and best bidder for said one-fourth interest at the price of $500, and,

"Whereas, the first party, at the same time, to-wit: February, 2, 1920, took a mortgage from the said J. Mack Miller on his one-fourth undivided interest in three certain houses and lots in the Town of Sweetwater, Monroe county, Tennessee, to secure a certain promissory note in the principal sum of $1250, dated February 2, 1920, providing for interest and attorney's fees, which mortgage was foreclosed by the trustee named in said mortgage on the 29th day of April, 1922, at which time the total amount of said indebtedness, including interest and attorney's fees, was $1559.25, and,

"Whereas, at said sale, first party became the highest and best bidder for said one-fourth interest at the price of $1600, the first of said mortgages being duly of record in the register's office of Knox county, Tennessee, and the second being duly of record in the register's office of Monroe county, Tennessee.

"Now, therefore, it is mutually understood and agreed between the first and second parties hereto that first party will not be required to pay any part of said two bids in cash at the present time, but that a trustee's deed will be made to first party in each instance, conveying to him said one-fourth undivided interest of the said J. Mack Miller in said properties, and that first party will file a partition suit in the county court of Knox county, Tennessee (which suit has already been commenced, styled J. W. Walker v. Alice M. Gould, et al., No. 6390, on the rule docket of said court, and is now pending) to sell for partition said house and lot in Knox county, Tennessee; and first party will file a partition suit in his own name in the chancery court of Monroe county, Tennessee to sell for partition said three properties in Monroe county, Tennessee, and first party hereby sells, assigns and transfers unto second party all of his right, title and interest in and to his one fourth interest in the proceeds of said sales until the full amount of $492.12 has been paid from his portion of the proceeds of the sale of the Knox county, property, and until the full amount of $1559.25, has been paid from his portion of the proceeds of the sale of the Monroe county properties, and the clerks of the respective courts are hereby authorized to make payment to second party or his attorneys in accordance with this agreement.

"This agreement is entered into for the reason that first party has no funds with which to pay the amount of said mortgage indebtedness until said property has been converted into cash by sales for partition.

"Witness our hands in duplicate on the day and year first above written.

"J. W. Walker,
"First Party.
"By S. E. Hodges,
"His Solicitor in said matters.
"J. Arthur Atchley,
"Second Party."

Notwithstanding the finding of the Chancellor, we think the record shows that Mr. Hodges had authority to bind Mr. Walker in the making of the above quoted contract. He had represented him in the damage suit and had secured the $800 judgment against J. Mack Miller. The contract was drawn in a friendly effort upon the part of Walker and Atchley to procure the payment of both of their indebtednesses against Miller out of his one-fourth interests in the four pieces of real estate—Atchley's to be paid first because his deeds of trust were liens prior to Walker's judgment.

Pursuant to the above quoted contract or agreement, a bill was filed in the chancery court of Monroe county in the name of J. W. Walker as the owner of an undivided one-fourth interest in the three pieces of real estate in Sweetwater, against the owners of the other three one-fourth interests, for the purpose of a sale for partition of said three pieces. This bill alleged that Walker was the owner of the one-fourth interest, and it made no mention of the above quoted contract or agreement, and the deed from Edward F. Walsh, Trustee, to Walker which was filed in evidence recited that the $1600 consideration stated therein had been paid. This partition bill was prepared and signed by Mr. S. E. Hodges and Mr. J. Fred Bibb, the former being Mr. Walker's attorney, and the latter being Mr. Atchley's law partner.

Such proceedings were had in the partition cause that it was adjudged that Mr. Walker owned an undivided one-fourth interest, that the defendants therein owned the other three one-fourth interests, that the property could not be partitioned in kind, etc., and the Clerk & Master, Mr. Isbill, was ordered to and did sell it. The final decrees confirming the sales were entered on June 5, 1923. They ordered Mr. Isbill, the Clerk & Master, when he should receive the purchase money, to pay one-fourth of it to the complainant, J. W. Walker, and the other three fourths to the defendants who owned the other three one-fourth interests. However, the purchase money was not received by Mr. Isbill until shortly before June 17, 1925.

On December 20, 1923, which was after the final decrees had been entered, Mr. Atchley signed and acknowledged before a notary public, the following:

"JUNIUS W. WALKER
vs
MILLER AND GOULD.

No. 2442.

In the Chancery Court

At Madisonville, Tenn.

"I, J. Arthur Atchley, of Knoxville, Tennessee, am the owner of a certain interest, amounting to eleven hundred and fifty dollars ($1150), or more, in the proceeds of sale in the above styled cause, which property has been sold and I am indebted to Mrs. Fannie B. Sandberg, of Knoxville, Tennessee, and to J. F. Leake and wife, Jennie T. Leake, of Birmingham, Alabama, in a sum of money in excess of that coming to me in the above styled cause, and I hereby, in consideration of my indebtedness to said Sandberg and Leake, transfer and assign to said Sandberg and Leake all the money, together with the interest thereon, to which I am now entitled, or shall be entitled, in the above styled cause, and I hereby direct the Clerk & Master when the said money is paid, to pay all sums to which I am entitled, or shall be entitled, to Green, Webb & Cowan, of Knoxville, Tenn., attorneys for Mrs. Sandberg and J. F. Leake and wife, which money when paid will be applied upon the notes that I owe to each of them, but, I understand that this assignment is in addition to other security held by the said Sandberg and Leake, and does not in any way affect their present rights of foreclosure upon a certain farm in Knox county, Tennessee, but this is in addition thereto.  This December 20, 1923."

On December 21, 1923, this assignment was marked filed by Mr. Isbill and was pasted to page 171 of Execution Docket No. 8, on which page we suppose the style, etc., of the partition cause was entered, and a notation was made in pencil at the bottom of the page to "Send the check to Green, Webb & Cowan, Knoxville, Tennessee." The record is hazy in the matter, but it seems that Judge Webb, of the firm of Green, Webb & Cowan, Knoxville, Tenn., delivered the assignment to Mr. Isbill in person at his office and made the pencil notation, and that Mr. Isbill pasted it to page 171. The court was not in session, no leave of Court was procured to file the assignment, and no order or minute entry of any kind was made with reference to it.

Later, Judge Webb noticed that the contract or agreement between Mr. Walker and Mr. Atchley hereinbefore quoted in full had not been filed, and that there was nothing in the record to show that Mr. Atchley had had any interest in the property or in the purchase price thereof which was to be collected and disbursed by Mr. Isbill. So evidently (here again the record is quite hazy) he mailed the contract or agreement between Walker and Atchley to Mr. Isbill. At any rate Mr. Isbill received it and marked it filed on July 5, 1924, and made an entry on the Rule Docket as follows: "Agreement between J. W. Walker and J. Arthur Atchley filed July 5, 1924." The

court was not in session, no leave of court was procured, no order or minute entry was made, and Mr. Isbill had still not collected the purchase money from the purchaser of the property.

Some time later, but before Mr. Isbill received the purchase money from the purchaser, Mr. Atchley paid his entire indebtedness to Sandberg and Leake, or rather to their attorneys, Green, Webb & Cowan, but did not at that time take a reassignment from them.

A few days prior to June 17, 1925, the purchase money was received by Mr. Isbill, and on June 17, 1925, Mr. Walker appeared at Mr. Isbill's office and asked that his one-fourth of it be paid to him. Mr. Isbill, overlooking the assignments, and thinking that Mr. Walker was entitled to the money (he had been there several times asking for it) paid it to him by check, and had him receipt for it on the bottom of page 171 of Execution Docket No. 8, evidently erasing a part of the pencil notation so as to have space for the receipt and signature.

There is a conflict in the evidence as to whether the assignments had been actually brought to the personal specific attention of Mr. Isbill by letter and orally. He denies that they had.

On August 24, 1925, Green, Webb & Cowan, attorneys for Sandberg and Leake executed a reassignment to Mr. Atchley, but the same was never filed in the partition suit which had evidently been wound up and closed at that time. However, it was of course executed prior to the filing of the motion by Mr. Atchley against Mr. Isbill in December, 1925.

As stated, the lower court dismissed the motion at Mr. Atchley's cost, and we think correctly so. Shannon's Code, section 6292, provides:

"The Clerk & Master shall promptly pay, on demand to the party entitled, all monies in his hands, according to the directions and decrees of the court: and a wilful disobedience of the provisions of this section is a misdemeanor in office, for which he may be removed by the Chancellor."

In Bank v. Clark, 9 Baxter, 589, the Supreme Court said:

"Clark (the Clerk & Master) had no interest in the matter and was merely an official of the court and was bound to pay out the money according to the orders and decrees of the court. Had there been an order or decree in the record directing the money to be paid out to the Bank, Clark's payment to any one else would not have released him. But he was not bound to accept this order and any acceptance made by him might well be accompanied by such conditions as he deemed necessary for his protection."

Mr. Gibson in his Suits in Chancery, section 644, says:

"Money in the hands of the Clerk & Master of the court is in custodia legis and subject to the orders and decrees of the court and

cannot be lawfully paid out to any one except by the order of the court. It can be reached by attachment or garnishment only by suit against the party entitled to it.''

Again in section 1166, Mr. Gibson says:

''The Master must always keep in mind the fundamental fact that in receiving, holding and paying out money he is the mere hand of the court, and the trustee of the parties interested in the money. He has no discretion vested in him, whom to pay, where to pay or how to pay, but must pay the person lawfully entitled under the decree and must make the payment in the precise manner specified by the statute or by the decree; and must pay at his office without delay, upon application of the party entitled, or his agent or attorney. The clerk has no right or authority to pay money in his hands in a cause to any one except in obedience to an order of the court, or in compliance with some statute.''

That the proper practice, where the owner of a fund in court assigns it or a part of it to some third party, is for the third party to procure the entry of a decree recognizing the assignment and ordering the Clerk & Master to pay the money to the third party, is also shown by Nelson v. Trigg, 7 Lea, 69, where this was done.

In the instant case there was no such order or decree recognizing the assignments or ordering the Clerk & Master to pay the money to Green, Webb & Cowan or to Mr. Atchley, and it should be remembered that the partition bill alleged that Walker owned the one-fourth interest, the proof showed that he did, the Clerk & Master on this proof reported that he did, and the decrees adjudged that he did and ordered the Clerk & Master to pay the money to him. In other words the partition cause was proceeded in to final decree without it being disclosed that Mr. Atchley ever had any interest in the proceeds of the sale, and then when the assignments were filed they were not filed together or near together, nor in the order in which they were executed, nor in term time, nor by leave of court, nor were they recognized by any order or decree. And all of this was done by and with the consent of Mr. J. Fred Bibb who was Mr. Atchley's law partner and an active attorney in the partition suit.

Under these circumstances it seems to us that Mr. Isbill, even though he may have been subject to criticism for overlooking the assignments at the time he paid the money to Walker, should not be held liable when the danger of such a mistake being made could so easily have been avoided by the attorneys entering a decree or order recognizing the assignments and ordering Mr. Isbill to pay the money accordingly.

It results that in our opinion there was no error in the judgment or decree of the lower court and the same will be affirmed. The

costs of the appeal will be taxed against Mr. Atchley and the sureties on his appeal bond.

Portrum and Snodgrass, JJ., concur.